### HALL *vs.* MULHOLLAN, EXECUTOR, &c.

7L 383
49 521

APPEAL FROM THE COURT OF THE SIXTH JUDICIAL DISTRICT, THE JUDGE THEREOF PRESIDING.

A bill of sale, executed in Kentucky, and valid under the laws of that state, which expresses the sale to be made, for a *valuable consideration*, without fixing any price, of certain slaves in Louisiana, will be tested by the laws of the place, where the contract was entered into; and being valid there, is good here, as between the parties, although not made in conformity to the laws of this state.

A contract, valid by the law of the place where it is made, as a general principle, is valid every where.

A chirographory creditor of a deceased vendor, whose estate he administers, as testamentary executor, has no right to withhold property or slaves found in the succession, from the vendee by a valid title, but which have not been delivered, without some right or lien, acquired in virtue of judicial process.

The executor derives his power from the will; is primarily the representative of the deceased, and not of the creditors of the succession, when it is not shown to be insolvent, and he is required to account to the heirs, and not to the creditors.

This is an action of revendication. The plaintiff sues to recover two slaves (Adam and Peter,) and two horses, which he alleges to belong to him, but now in the hands of the defendant, as executor of his deceased father, John Hall,

WESTERN DIST. and which the latter withholds from him, and is about to sell
October, 1834. them, under an order of the Court of Probates. He further
HALL alleges, that he purchased the two slaves from his now
vs. deceased father, in Kentucky, for a valuable consideration,
MULHOLLAN. as will appear from a bill of sale, from his father to him,
dated the 16th September, 1829, which he annexes to his
petition. He states, that these slaves were included with
five others, in the same bill of sale, but were in the state
of Louisiana, at the time of the sale, and have remained
here, as his father died soon after his return from Kentucky;
that the defendant, as executor of his father's succession,
claims said slaves as a part of it, which, with two horses, also
belonging to him, the executor has placed in the inventory,
and applied to the probate judge, to have sold. He prays for
an injunction, to restrain the sale thereof, and that the execu-
tor be condemned to deliver to him, the two slaves and horses
aforesaid.

. The defendant pleaded a general denial; and that the bill
of sale, under which the plaintiff claims the negroes in ques-
tion, is not a valid instrument, to transfer the property in said
slaves, by the laws of Louisiana; that there was no price
paid, or consideration or sum specified, in said bill of sale,
to be paid for said slaves, and no delivery took place; and
that said instrument is equally defective, whether intend-
ed as a pledge for money paid or advanced, or as a sale, there
being no delivery of the property. He further states, that the
succession of Hall owes a large amount of debts, to creditors
residing in Louisiana, without having sufficient property to
pay the same, and it would be contrary to equity and law, to
permit the plaintiff, who is one of the heirs of John Hall,
deceased, to take any portion of the property of the succession
from the state, &c.

The bill of sale produced in evidence, declares that John
Hall, "for a valuable consideration, aliened, granted, bar-
gained and sold, &c., unto Alfred J. Hall, of Scott county,
in the state of Kentucky, the following negroes : *Peter, Adam,*
&c., slaves for life, being the same negroes, mortgaged by me
to M. Goddard, &c., to have and to hold said negroes, to him

the said Alfred J. Hall, subject to said mortgage, and his heirs forever; and I hereby warrant the title to said slaves, to him the said Alfred, against the claim of all persons whatsoever, save said mortgage," &c.

*James F. Robinson*, an attorney at law, in the state of Kentucky, in answer to interrogatories, states, " that he recognises this bill of sale, which was written by him, in the presence of the parties, and signed by J. Hall, who in unequivocal words, said it was a real and *bonâ fide* sale of the negroes named in it, with the professed object of both parties, of passing the titles to them. He further says, that by the laws of Kentucky, said bill of sale is legal and valid; and no other form is necessary there, to make a legal transfer of slaves; that the consideration specified, which is called *a valuable consideration*, is sufficient to constitute the bill of sale a legal one; and that by the laws of Kentucky, *love and affection* from parent to child, is a good consideration to sustain a contract, &c., between the parties and subsequent creditors," &c.; but that in this instrument, the terms " *valuable consideration*," were used to show, that it was not executed from love and affection, but that he saw the plaintiff pay on the mortgage to Goddard, five hundred dollars, part of a debt due by John Hall, deceased, which both of them stated, was a part of the consideration, which the plaintiff gave his father for said negroes. Witness understood from both, it was a purchase, and not a gift.

In November, 1829, two months after executing the bill of sale of said negroes, John Hall returned to his plantation in Louisiana, and died. In his will, he bequeathes the two slaves, Adam and Peter, the former to another son, John Hall, and Peter and his wife, to a free woman of color and her daughter. These two slaves were in Louisiana, at the time they were sold to the plaintiff, in Kentucky. The plaintiff made an attempt to carry them, and several other slaves, found in the succession of Hall, to Kentucky, but was pursued and overtaken by the defendant.

49

The plaintiff had judgment for the two slaves; from which the executor, after an unsuccessful attempt to obtain a new trial, appealed.

*Dunbar and Winn,* for the plaintiff, contended, that the sale of John Hall to the plaintiff, was good, even if it had been made as a donation, being from father to son, and when the donor is not insolvent.

2. The bill of sale is genuine, and passes title in the slaves to the plaintiff, without delivery.

3. The sale is good, according to the laws of Louisiana; for being valid under the laws of Kentucky, where the contract was made, it is valid every where.

4. It is not necessary, that the term valuable consideration, should be expressed by a fixed sum of dollars and cents, to make a contract valid in Kentucky, where this sale was passed. It is sufficient, if it be for a good consideration, as the love and affection of a parent, &c. This consideration may be shown by testimonial proof.

*Boyce,* for the defendant, contended, that the executor found the property now claimed by the plaintiff, in the succession of the ancestor of the plaintiff, and was bound to administer it as such.

2. The plaintiff has no legal right or title to this property; for although the contract of sale under which he claims, might be valid in Kentucky, as a sale between the parties, according to the laws of *that state,* yet so far as it purports, to change the ownership of immoveable property, situated in Louisiana, it should have no effect *quoad this property,* because it would not be good if made here.

3. The general principle is admitted, as contended for, that "a contract, valid by the laws of the place where it is made, is valid every where." But the exception is also well founded, that contracts relating to immoveable property, within the jurisdictional limits of this state, no principle of comity or law, requires us to regard or enforce the law

of another state, when it is entirely different in its provisions, from our own.

4. Where personal or moveable property alone is concerned, the rule (it is admitted,) would be otherwise, both according to the common law, and our own system of jurisprudence. A contract for such objects, would be binding every where, if not contrary to good morals or positive law. This rule is well settled in England. See *case of Potter* vs. *Brown*, 3 *East's Reports*, 31.

5. According to *Huberus*, " a deceased person, with a family, whose property was in different provinces, the real property would descend according to the place where it was situated. But with respect to personal property, it would go according to the law of the place where the intestate lived, and of which he was an inhabitant." This court has recognised the same principle in the case of *Saul* vs. *his creditors*, 5 *Martin, N. S.* 590.

6. The rule then, is established in Saul's case, that where the personal statute of domicil, is in opposition to the real statute, where the property is situated, the real statute will prevail.

7. In this case, though the domicil of John Hall might be regarded as in Kentucky, for the purpose of this contract, and that it is to be governed by the laws of that state, as respects its validity, but it cannot operate on property in this state, peculiarly regulated by our laws.

8. To give effect to this contract, as proved by the testimony of the attorney at law, in Kentucky, would be giving effect to a sale of slaves in this state, by parole agreement, which is prohibited by our laws.

*Bullard, J.,* delivered the opinion of the court.

The plaintiff sets up title to two slaves, under a conveyance from his father, the testator of the defendant, and procured from the District Court, an injunction, inhibiting the defendant as executor, from proceeding to sell them as belonging to the estate. The answer admits the execution of the bill of

WESTERN DIST.
October, 1834.

HALL
vs.
MULHOLLAN.

sale, which is exhibited as evidence of title, on the part of the plaintiff, but denies that it is a sale, in as much as no price is stipulated, and no delivery ever took place. The defendant further pleads, that the estate of Hall, is largely indebted in the State of Louisiana, and among others, to himself, who is the testamentary executor, and that there is not property enough in the state, to pay the debts due here, and the plaintiff as one of the heirs, cannot legally take out of the state, any part of the property belonging to the estate, while he has in his hands in Kentucky, a portion of it, greater in amount than any debt which the deceased owed him.

A bill of sale executed in Kentucky and valid under the laws of that state, which expresses the sale to be made for a valuable consideration, without fixing any price, of certain slaves in Louisiana, will be tested by the laws of the place where the contract was entered into; and being valid there, is good here, as between the parties, although not made in conformity to the laws of this state.

The instrument, purporting to be a sale of the slaves in question, was executed in Kentucky, while the slaves were in this state and remained until his death, in the possession of the testator. The first question which the case presents is, whether that instrument is evidence of a contract of sale. It is contended, that it is not because no price is fixed, and determined by the parties, on the authority of the case of *Conway* vs. *Bourdier et al.* 6 *La. Reports*, 346. Tested by our law, we should perhaps be compelled to say, that there is wanting an essential ingredient to constitute a sale, and that it could not avail as a donation, because not passed before a notary. But its essential character, as between the contracting parties, is to be ascertained by reference to the laws of the place where the contract was entered into; a contract valid by the law of the place where it is made, is valid every where. This is the general principle often recognised by this court and sanctioned by the highest authorities. 2 *Kent's Com.*,

A contract valid by the law of the place where it is made, as a general principle, is valid every where.

264. The effect which is to be given to contracts made abroad in relation to our own citizens, is a distinct question. It is shown by evidence in the record, that according to the laws of Kentucky, this instrument would be a valid bill of sale between the parties, and the expression "for a valuable consideration," a sufficient enunciation of the price. We are, therefore, of opinion, that, as between the parties, it vested the title in the plaintiff.

It is equally well settled, that the sale of slaves cannot have effect as relates to creditors before delivery. In this case no

delivery is pretended, and the only remaining question is, whether the defendant, either in his own right as creditor, or in his character of executor, has a right to retain the slaves in question, and sell them to pay the debts of the estate. The defendant has shown that he is a creditor of the deceased. It is clear that the property would be liable to attachment or seizure, at the suit of creditors before delivery, but it does not appear to us to follow, that a creditor would be authorised to retain possession without some right or lien acquired in virtue of judicial process.

. As testamentary executor, the defendant derives his authority from the will, and is primarily the representative of the testator. He does not, like a syndic, derive his power from the creditors of the testator, nor is it to them, that he renders his account. He gives no security, and it is to the heirs he is accountable for his administration. They can, at any time, deprive him even of the seizin given by the will, on offering him a sum sufficient to pay the legacies. *Louisiana Code*, 1664.

The plaintiff is, himself, one of the heirs, and the defendant is sued as executor. He alleges that the estate, so far as the property is situated in Louisiana, is insolvent, and that he has a right to retain the slaves in dispute, for the benefit of the creditors. We are not prepared to say, that if it were shown the estate is insolvent, the executor might not be considered, as so far representing the mass of the creditors, as to authorise him to resist the claim of the plaintiff. But he has not shown the insolvency of the estate. A tableau of distribution is exhibited, which has not yet been homologated, and the record does not show the amount of property. We are not to presume insolvency in a case of this kind, and until that is shown, although it may not yet be two late for any creditor to arrest the property in the hands of the executor, he is, in our opinion, without authority, either under the will, or in his own right to defeat the conveyance to the plaintiff, and to refuse delivery. Until he shows some legal claim, he must be regarded as merely representing the testator, and his contracts are binding on his heirs and legal representatives.

A chirographory creditor of a deceased vendor whose estate he administers as testamentary executor, has no right to withhold property or slaves found in the succession, from the vendee by a valid title, but which have not been delivered, without some right or lien acquired in virtue of judicial process.

The executor derives his power from the will, is primarily the representative of the deceased, and not of the creditors of the succession when it is not shown to be insolvent, and he is required to account to the heirs and not to the creditors.

WESTERN DIST.   It is, therefore, ordered, adjudged and decreed, that the
*October*, 1834.  judgment of the District Court be affirmed, with costs.